(173 App. Div. 396)

## PEOPLE v. MOY HE.

(Supreme Court, Appellate Division, Second Department. May 26, 1916.)

1. PERJURY ⟲33(8)—EVIDENCE—SUFFICIENCY.

Evidence *held* to sustain a verdict finding defendant guilty of perjury by falsely testifying at another trial.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 123; Dec. Dig. ⟲33(8).]

2. WITNESSES ⟲372(2)—IMPEACHMENT—ACCUSATION OF CRIME.

In a prosecution for perjury, it is competent, on the issue of possible prejudice or bias, to ask a witness for defendant whether he had not also been indicted for perjury at the trial at which defendant was accused of having sworn falsely.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1193–1196; Dec. Dig. ⟲372(2).]

3. CRIMINAL LAW ⟲1170½(6)—TRIAL—MISCONDUCT OF COUNSEL—EXAMINATION OF WITNESS—ACTION OF COURT.

If it was error to ask defendant's witness whether he had not also been indicted for perjury at the trial at which defendant was accused of having sworn falsely, the defendant was not prejudiced, where the judge sustained the objection thereto and directed the jury to disregard the incident of the question entirely.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3134; Dec. Dig. ⟲1170½(6).]

4. PERJURY ⟲32(8)—EVIDENCE—ADMISSIBILITY.

Where it was shown that deceased was alive and in his laundry on Coney Island after 10 p. m. on April 19th, evidence that one who defendant testified killed deceased was in Lawrence, Mass., over nine hours by rail away, on the evening of April 18th, and on the morning of April 20th, while not conclusive, is competent as a circumstance on trial of defendant for perjury in giving such testimony.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 115; Dec. Dig. ⟲32(8).]

5. CRIMINAL LAW ⟲1153(1)—APPEAL—PRESERVATION OF OBJECTION—EVIDENCE.

Where testimony is received without objection, no claim of error can be predicated upon the refusal to strike it out; but it was within the discretion of the trial court, whose ruling is not reviewable.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3061; Dec. Dig. ⟲1153(1).]

6. PERJURY ⟲32(8)—EVIDENCE—ADMISSIBILITY.

Where defendant, accused of perjury, had testified that a murder was committed between 7 and 8 o'clock, testimony of others that at 11 or 12 o'clock they heard shots fired in the vicinity of the laundry in which

⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

deceased was found dead is a circumstance proper to be considered in determining the time of the murder and falsity of defendant's testimony.

[Ed. Note.—For other cases, see Perjury, Cent. Dig. § 115; Dec. Dig. ⊜⇒32(8).]

7. CRIMINAL LAW ⊜⇒1169(5)—TRIAL—CORRECTION OF ERRORS.

One accused of perjury was not prejudiced by the error, if any, in admitting an alleged irresponsive statement of a witness as to his conclusion regarding defendant's motive in falsely testifying, where the court thereafter reversed its ruling and struck out the testimony objected to.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3141; Dec. Dig. ⊜⇒1169(5).]

Appeal from Trial Term, Kings County.

Moy He was convicted of perjury, and he appeals. Affirmed.

Argued before JENKS, P. J., and CARR, STAPLETON, RICH, and PUTNAM, JJ.

James W. Osborne, of New York City, for appellant.

Harry G. Anderson, Asst. Dist. Atty., of Brooklyn (James C. Cropsey, Dist. Atty., of Brooklyn, on the brief), for the People.

RICH, J. The defendant was convicted of the crime of perjury, and from the judgment accordingly entered appeals, bringing up for review additional orders denying several motions, among them one for a new trial.

On April 19, 1912, a laundryman named Fong Gow was murdered in his laundry at Coney Island. One Yee Quong was indicted and placed on trial for the murder. The appellant was the principal witness for the people upon the trial, and testified among other things that he was a customer of Fong Gow, whom he had known for five or six years; that on the evening of the 19th of April, 1912, at about 7 or eight o'clock, he went to his place of business to get his laundry; that as he approached the front door he heard shots; that the front door of the laundry was open, and there was a light inside; that he looked in and saw Yee Quong shoot Fong Gow; that he ran into an adjoining alleyway; that Yee Quong fired a second shot; that he looked through the window into the laundry, and saw Fong Gow fall to the floor, and that Yee Quong then ran out of the front door and away from the building; that he then returned to the restaurant where he worked, reaching there at about half past 8; that he told no one what he had seen until about three months after, when he told Ah Kiang, a cousin of Fong Gow. He further testified that he had known Yee Quong a little more than four years, and that he had seen him several times at Coney Island, and met him in Chinatown in New York on Sundays more than 100 times; that he met him on Sundays in February, 1912, in Chinatown. The jury acquitted Yee Quong, and thereafter the appellant was indicted for perjury, alleged to have been committed by him at said trial.

The people, after putting the testimony of the appellant upon the trial of Yee Quong in evidence, swore Yee Quong, who testified that for about six years prior to April 19, 1912, he resided in Lawrence,

Mass., where he carried on the laundry business; that in 1912 he was an attendant at the Sunday schools of the Second Baptist and South Congregational churches of that place; that he never knew any one by the name of Fong Gow, and had never been to Coney Island, or to Chinatown in New York, or to New York City; that after taking up his residence in Lawrence he had never been away from such place until after April 19, 1912; that on April 18, 1912, between 5 and 6 o'clock in the evening, and on April 20th, between 8 and 9 o'clock in the morning, a friend and customer of his by the name of Edward Cantillon called at his laundry; that he did not kill Fong Gow, and on the night of April 19th, at the hour when defendant testified to having seen him in Coney Island, he was sleeping in his store at Lawrence; that he never saw Moy He (the appellant) until he came to his laundry in Lawrence with two detectives at the time when the witness was arrested. The superintendent of the Chinese Sunday school in Lawrence, who testified from an attendance book personally kept by her, said that Yee Quong was present at the Sunday school in Lawrence on each and every Sunday from January 1 to July 1, 1912; that such Sunday school met and was in session from half past 2 to half past 4 o'clock in the afternoon of each of said Sundays; that prior to April 19, 1912, she frequently, and at times as often as once a week, called at the laundry of Yee Quong, and always found him there, and, so far as she observed, he was never, prior to said April 19th, away from Lawrence. A teacher in a Baptist Sunday school in Lawrence testified that the school met and was in session every Sunday between half past 5 and 7 o'clock in the afternoon; that a report of individual attendance was kept, and that in the month of February, 1912, Yee Quong was present at the sessions of said Sunday school held on February 4th, 11th, and 18th.

Edward A. Cantillon testified that on April 18, 1912—which was a legal holiday in Massachusetts—at 9 o'clock in the evening, and on April 20th at about 10 o'clock in the forenoon, he called at the laundry of Yee Quong in Lawrence and found him there at work on both occasions; that prior to April 19th of that year he had visited said laundry every week, and invariably found Yee Quong therein on such occasions; that the railroad running time of the through trains from Lawrence to New York City was about nine hours. Samuel Blakeman testified that between 10 and 11 o'clock on the night of the murder he passed the laundry of Fong Gow and saw him there at work. Charles Allen testified that he lived directly across the street from the Fong Gow laundry, and about 100 feet from it; that while sitting on the porch of his house, between 11 and 12 o'clock on the night of April 19, 1912, he heard two or three shots fired; that he paid no particular attention to them then, but the following morning he went to the laundry and found the gas burning and Fong Gow dead on the floor. Maria Miggins testified that her house was next to the laundry; that she was at a motion picture show on the evening of April 19, 1912, and on her way home noticed by a clock at Culver depot that it was a quarter after 11 o'clock; that after she had retired, and be-

tween 11 and 12 o'clock, she heard two shots fired in the vicinity of her home.

It was proven by the physician who performed an autopsy on Fong Gow that he found two bullet wounds in the body. Moy He testified substantially as he did on the trial of the indictment against Yee Quong, reiterating the story of the shooting and of his acquaintance with Yee Quong. Ah Kiang testified that he was a cousin of Fong Gow, knew Yee Quong, and had seen the latter in 1911, and in April, 1912, at the laundry of Fong Gow, two or three times, on which occasions the latter gave Yee Quong money; that the last time he came he wanted $30, and on that occasion there was a good deal of talk between him and Fong Gow, and when the former left the laundry he told Fong Gow to "look out"; that one Wu Chung (who was not sworn) had told him that Yee Quong, on one occasion when drunk, had confessed to him that he killed Fong Gow. Wong Tang, who was employed in a chop suey restaurant in Coney Island, testified that while standing by a telegraph pole across the street from the laundry of Fong Gow, between 7 and 8 o'clock on the evening of April 19, 1912, he saw Yee Quong run along the car track away from the laundry; he heard no shots fired, and told Ah Kiang, when questioned by him several times, that he knew nothing about the matter, but finally told him what he had seen. Wong Quong testified that he knew Yee Quong, and had seen him to or three times in 1912 on Pell street in Chinatown. Lee Hong testified that he knew Yee Quong, and had seen him in Chinatown once in 1911 and once in 1912.

[1] The testimony of each of the Chinese witnesses sworn for the defendant was contradictory and unsatisfactory. The case was submitted to the jury by the learned trial court in a charge which was so fair, impartial, and free from error, and in which the rights of the appellant were so fully guarded and protected, that no exception was taken by either party. The jury found the defendant to be guilty, and the finding is amply sustained by the evidence, and unless some error prejudicial to the defendant is presented the verdict must be sustained.

[2, 3] When the witness Ah Kiang was on the stand, the district attorney asked him if he had not been indicted for perjury committed on the trial of Yee Quong. This was objected to as incompetent, irrelevant, and immaterial. The objection was sustained, and, at the request of defendant's counsel, the court directed the jury to disregard the question and incident entirely. It is now contended that the asking of the question was for the sole purpose of prejudicing the defendant with the jury, and presents reversible error. I think the evidence was competent to show the interest of the witness, and possible prejudice or bias in giving his testimony, which was a proper subject for the jury to consider in determining the weight to be given his evidence. Ryan v. The People, 79 N. Y. 593, 600. In any event, the defendant was not prejudiced; the objection was sustained, and the jury directed to disregard the incident in its entirety.

[4, 5] It is further contended that prejudicial error is presented by the exception to the refusal of the court to strike out the testimony of the witness Cantillon, because the fact that Yee Quong was seen

in Lawrence on April 18th and 20th was immaterial; it being possible, notwithstanding such fact, for him to have been in Coney Island on the night of the 19th. I think the evidence was proper, in view of the distance between Lawrence and Coney Island, and the time it would take to travel from the one place to the other, and in view of the evidence that Fong Gow was alive and working in his laundry until after 10 o'clock on the night of the 19th. While not at all conclusive, it was a circumstance to be considered by the jury, and was properly received for what it was worth. Furthermore, the testimony was received without objection, and no claim of error can be predicated upon the refusal to strike it out. It was in the discretion of the trial court, and is not reviewable. People v. Chacon, 102 N. Y. 669, 671, 6 N. E. 303.

[6] In reference to the exception to the refusal to strike out the evidence of the witnesses Allen and Miggins, this evidence was also received without objection. In addition, it was a circumstance proper to be considered by the jury in determining the time the murder was committed. It had probative force and value, as tending to establish the falsity of defendant's testimony that the killing was between 7 and 8 o'clock.

[7] On the cross-examination of the witness Yee Quong, counsel for the defendant, asked him if he knew of his own knowledge of any object Moy He would have in sending him to the electric chair. The witness answered:

"On account of the laundry, 257 South Union street. * * * On account of his tong, they wouldn't allow other Chinamen to go there and open a laundry."

Counsel for the defendant moved to strike. this answer out, on the ground that the witness was not speaking from his own knowledge. In answer to a question by the court, "Do you know that of your own knowledge?" the witness answered, "It is my own knowledge." The court stated: "I will let it stand for what it is worth. He simply makes that statement." On his redirect examination the witness said that the answer was his "conclusion," and on defendant's again moving to strike it out the court ruled, "I strike it out." The record shows the following to have then taken place:

"Mr. Osborne: May all of that incident be stricken out?
"The Court: Yes.
"Mr. Warbasse: I do not understand your honor to strike out what came out on cross-examination.
"The Court: No; just this last, that you asked.
"Mr. Osborne: Well, I want that part, then, to stay, that it was his conclusion, if your honor please, because, you see, I claim the whole incident ought to go out.
"The Court: It was practically shown by your cross-examination that it was his conclusion as to why he had committed perjury to deprive him of his life.
"Mr. Osborne: But he does not base it on anything but hearsay.
"Mr. Warbasse: He is not asked for hearsay at all.
"Mr. Osborne: I beg your pardon. He stated that it is his conclusion; that is just my point. If your honor please, I admit that I trusted to this man answering my question responsively, which it is perfectly palpable that he has not done. I asked him, 'What do you know, of your own knowl-

edge?' Now, he said it was because of the laundry; and your honor puts a question to him, and he states that that was his conclusion.

"The Court: Why don't you let it stand at that, then, and let the whole testimony stand, including the statement that that was his conclusion?

"Mr. Osborne: I know; but it is hearsay.

"The Court: It explains his cross-examination.

"Mr. Osborne: That is what I say. I would rather have this last part stand, too.

"The Court: That is what I would suggest, then—letting it all stand.

"Mr. Osborne: I would like to have the whole incident go out, though, if I may.

"The Court: I will deny the motion to strike it all out. I will let it stand, that it was his conclusion.

"Mr. Osborne: I respectfully except, not to the ruling of your honor in not striking out that it was his conclusion, because I do not move for that, but I do move that the whole incident, in toto, go out.

"The Court: I will let it stand. It was brought out on cross-examination. That is why I let it stand."

At the close of the evidence, the court said to counsel for defendant:

"There is one point that I am going to take up now. You made a motion to strike out that testimony, but you really brought it out yourself, on cross-examination, as to whether or not he knew of a motive.

"Mr. Osborne: Yes.

"The Court: I am going to strike out that testimony, including that part of your cross-examination.

"Mr. Osborne: Yes; I requested it to go out.

"The Court: I will strike it all out, and I will strike it out on the ground that it was proved afterward that it was his conclusion, and, further, on the ground that the question of motive is not involved in a perjury case, anyhow. It is out, and I will instruct the jury that the testimony of Yee Quong as to any motive on the part of the defendant to testify falsely against him is stricken out."

The error in the first ruling, if there was any, was cured by the subsequent reversal of the ruling. People v. Koerner, 117 App. Div. 40, 102 N. Y. Supp. 93, affirmed without opinion 191 N. Y. 528, 84 N. E. 1117; People v. Barnes, 202 N. Y. 77, 95 N. E. 15.

Justice does not require a reversal of this judgment of conviction, and it must be affirmed. All concur.